633 So.2d 325 (1993)
STATE of Louisiana
v.
Myles ALLEN.
No. KA 93 0119.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
*326 Charles Genco, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Robert Troyer, Asst. Public Defender, Amite, for defendant-appellant.
Before FOIL, PITCHER and PARRO, JJ.
FOIL, Judge.
The defendant, Myles Allen, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He appealed, alleging two assignments of error, as follows:
1. The trial court erred in restricting the scope of defense counsel's voir dire examination.
2. The trial court erred in sustaining the prosecutor's objection to the defendant's testimony regarding his mental condition.
At approximately 11:30 p.m., on August 16, 1988, the defendant killed his common-law wife, Renee Burton, at her apartment in Independence, Louisiana. The defendant stabbed the victim approximately thirty-five times with the broken half of a pair of scissors. The victim's nine year old son witnessed the stabbing and rushed from the apartment to summon help. The victim was pronounced dead at a local hospital shortly before midnight. The defendant was arrested in Baton Rouge early the following morning.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the trial court erred in curtailing defense counsel's voir dire examination.
During defense counsel's voir dire examination of prospective juror Russell Notriano, the following colloquy occurred:
Q. Speaking of that, Russell Notriano is a name that is familiar to me for some reason; do you have an uncle or something or someone that was involved in politics or public office, I should say?
A. I have an uncle that's involved with the Sheriff's Department. He's a Tallo.
Q. That wouldn't have anything to do with your judgment?
A. I don't think so.
Q. Well, let me put it to you this way; ifand there have beenthis is hypothetical. In the event that a policeman testified to a set of circumstances and an ordinary citizen, for instance, testified, say, thatthat that wasn't correct
A. I'm following your lead right now.
Q. Right, what would be your
[Prosecutor]: Wait a minute, counsel,
Q. Do you think a
[Prosecutor]: Objection. Wait a minute, counsel. I thought we had covered all this when the Court voir dired all these people, Your Honor. You asked each and every one of these jurors if they would favor a law enforcement person's testimony over an ordinary citizen, and there was a negative response, and now, we're going over the same thing.
[Defense Counsel]: Your Honor, II don't know what the objection is, exactly, but, of course, have a right to voir dire this.
THE COURT: Yes, you do, Mr. Troyer. The objection is sustained; the Court has asked these questions, and they've been answered by the jury. Let's move on to other specific areas.
[Defense Counsel]: Your Honor, I'd like to assign that as Error Number One.
THE COURT: All right, assignment noted.
[Defense Counsel]: Is it my understanding that the Court is not going to allow me to ask that question of each and every individual?

*327 THE COURT: What question, Mr. Troyer?
[Defense Counsel]: The question as to whether they would believe a policeman in preference to a civilian, on the witness stand, under the set of circumstances that I just rendered?
THE COURT: The Court has asked the question and it's been answered. So, the ruling of the Court will be yes, we will not get into that again.
Assignment noted, Mr. Troyer.
[Defense Counsel]: Yes sir.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La.Const. Art. 1, § 17. La.C.Cr.P. art. 786 provides that the trial court, the State, and the defendant shall have the right to examine prospective jurors. State v. Bell, 477 So.2d 759, 765 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La. 1986).
Voir dire examination is designed to discover grounds for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Williams, 560 So.2d 519, 523 (La.App. 1st Cir.1990). The defendant should be allowed to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. His "right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the juror's potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case." State v. Bell, 477 So.2d at 766, quoting State v. Duplessis, 457 So.2d 604 (La. 1984). The scope of voir dire examination is within the sound discretion of the trial court; its rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Williams, 560 So.2d at 523. The disallowance of a proper question on voir dire examination does not automatically result in reversible error. In evaluating the fairness of the trial court's ruling, the entire voir dire examination must be considered. State v. Robinson, 404 So.2d 907, 911-912 (La.1981); State v. Morgan, 459 So.2d 6, 9 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1263 (La. 1985).
After considering defense counsel's question in the above colloquy in light of the jurisprudence, we find no abuse of discretion by the trial court. Questioning regarding the weighing of testimony by police officers is a proper subject for voir dire examination. See State v. Prieur, 294 So.2d 227, 228 (La. 1974). However, the trial court may refuse to allow repetitive questioning by counsel on topics which the trial court covered in its initial examination of the prospective jurors. See State v. Nix, 327 So.2d 301, 325 (La. 1975), cert. denied sub nom., Fulford v. Louisiana, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976). Arguably, defense counsel's question to Mr. Notriano was already covered by the trial court's initial examination of prospective jurors Russell Notriano and Sam Signarelli, which took place as follows:
[TRIAL COURT]:
Q. Do any of you have any close friends or close relatives who may be employed by the District Attorney's office, or the office of the Public Defender, the Department of Corrections, the State or City Police, the Sheriff's Office or any other law enforcement agency? A close relationship there? Yes sir, Mr. Notriano?
A. I have a cousin that's a deputy sheriff.
Q. All right.
A. John Wayne Notriano. But,
Q. Well, it's a small parish, I know.
A. Yeah.
Q. But the fact that you may have a close relative who's a deputy, for example, there may be deputies or law enforcement officers who take this witness stand and testify.
A. Right.
Q. Would the fact that you have a friend or a family member, who's
A. No sir.

*328 Q. A deputy, tend to make you believe or disbelieve a deputy's testimony, simply because he's a deputy, for example?
A. Oh, no sir. No sir.
Q. All right. That's thew (sic) reason we ask that particular question.
A. Yes sir.
Q. That's Mr. Signarelli?
A. Sam Signarelli; I work closely with the City Police in Hammond, being in the towing service, so, I'm familiar with a lot of `em, some state troopers, a lot of deputies, but I don't feel like that would interfere with my objectives.
Q. Would you be able to listen to a deputy or a law enforcement officer's testimony, just like you would any other witness, and assign to it whatever believability you thought was appropriate?
A. I think I could.
Q. You don't think you'd tend to believe him just because he might wear a uniform and is a deputy?
A. I don't think so.
On the other hand, noting that defense counsel did seek to ask Mr. Notriano a somewhat broader question involving the weighing of credibility in a situation involving contrary testimony by a police officer and a lay witness, we conclude for the following reasons that any error in the trial court's ruling was harmless beyond a reasonable doubt. In State v. Boen, 362 So.2d 519 (La.1978), the Louisiana Supreme Court reversed a conviction because the trial court improperly restricted defense counsel's voir dire examination on the subject of relations between prospective jurors and police officers. Boen was a drug case in which the State's evidence apparently was based on the testimony of police officers. However, in the instant case, unlike the situation presented in Boen, weighing the credibility of the testimony of police officers was not a critical issue. The only issue presented in this case was whether or not the defendant committed second degree murder or manslaughter. The testimony of the police officers in this case was primarily limited to the brief investigation of this homicide, the recovery of the murder weapon, the defendant's arrest and his confession. The most important testimony in this case was offered by the victim's son, who witnessed the stabbing. Another key witness was Larry Pitts, who left the victim's apartment shortly after the defendant arrived, saw the defendant fleeing the scene minutes later, returned to the apartment and drove the mortally wounded victim to the hospital. The defendant even took the stand and admitted that he killed the victim, although he explained that he lost control during the stabbing. Therefore, under these circumstances, assuming that the trial court abused its discretion by restricting defense counsel's voir dire examination regarding the determination or weighing of the credibility of testimony by police officers, we find that any such error was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the trial court erred in sustaining the prosecutor's objection, which prevented the defendant's testimony about his mental condition and mental health treatment.
La.C.Cr.P. art. 651 provides in pertinent part:
When a defendant is tried upon a plea of "not guilty", evidence of insanity or mental defect at the time of the offense shall not be admissible.
In the instant case, the defendant entered a plea of not guilty. Therefore, the prosecutor's objection, based on the grounds that the defendant's testimony in this area would be irrelevant because he had not entered a plea of not guilty and not guilty by reason of insanity, was properly sustained by the trial court. State v. Johnson, 475 So.2d 394, 397-398 (La.App. 1st Cir.), writ denied, 478 So.2d 143 (La.1985).

PATENT SENTENCING ERROR
We note the following patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance *329 of credit is mandatory. La.C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La. App. 1st Cir.1992). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served.

CONCLUSION
Based on the foregoing, defendant's conviction is affirmed, and his sentence, as amended, is affirmed.
CONVICTION AND SENTENCE, AS AMENDED, AFFIRMED; REMANDED WITH ORDER.